IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'26 AUG 12 PM2:09

MAUSEAN Q. V. CARTER,

Plaintiff,

v.

TONY ENONGENE, et al.,

Defendants.

Civil Action No.: 25-cv-0011-LKG

Dated: August 12, 2026

**MEMORANDUM**

Plaintiff MauSean Carter, who is currently incarcerated at Jessup Correctional Institution ("JCI"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants CO Tony Enongene, CO Francis Fruh, Sgt. Daniel Blamo, Sgt. Francis Muhari, CO Yvonne Hawkins, and Sgt. Fred Hinneh for violation of his First, Eighth, and Fourteenth Amendment rights.[1] ECF No. 6. In response, Defendants filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment on October 9, 2025. ECF No. 26. Carter opposes the Motion; Defendants replied. ECF Nos. 28, 32. Carter filed a Motion to Appoint Counsel (ECF No. 29) and Motion for Leave for Injunction Relief (ECF No. 34). This matter is ripe for review and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the following reasons, Defendants' Motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Carter's Allegations

Carter brings three causes of action: (1) violation of his First Amendment rights by all Defendants, (2) violation of his Eighth Amendment rights by Defendants Fruh, Muhari, Blamo, Enongene, and Hinneh, and (3) violation of his Fourteenth Amendment rights by Defendants Muhari, Blamo, Hinneh, and Hawkins.

Carter alleges that on June 14, 2023, CO Fruh, Sgt. Muhari, and Sgt. Blamo refused his request to report to a supervisor how Fruh had put his life in danger. ECF No. 6 at ¶ 1. Earlier that day, Fruh refused to open Carter's cell so he could go to his sanitation job assignment, and

[1] The Clerk will be directed to amend the docket to reflect Defendants' full and correct names.

when Carter repeatedly requested to speak to a supervisor, Fruh "started to broadcast on the tier" that Carter was "a snitch" and he was "telling" on inmates. *Id.* at ¶ 2, 3. Fruh only opened the cell to allow Carter to go to work when he saw that Carter's job duties were not being covered. *Id.* at ¶ 4.

When Carter was finishing his work, Fruh called for "medical movement," where inmates are escorted for medical treatment. ECF No. 6 at ¶ 4. Carter states that he receives daily treatment, but when he attempted to leave for medical movement, Fruh refused to let him leave the building. *Id.* at ¶ 4, 5. Sgts. Muhari and Blamo were called to the lobby, and Carter presented his medical pass and explained that he wanted to talk to a supervisor about Fruh's misconduct. *Id.* at ¶ 5. Fruh, Muhari, and Blamo ordered Carter to return to his cell. *Id.* at ¶ 6. Later, Muhari and Blamo instructed Fruh to write Carter a ticket and let him go for his medical pass. *Id.* at ¶ 8.

That same evening, Fruh again told inmates on the tier that Carter was a snitch because he tried to report Fruh for denying Carter a shower and threatening his job assignment. ECF No. 6 at ¶ 9. Fruh, Muhari, and Blamo again denied Carter's request to see the captain. *Id.* at ¶ 10. Carter filed a grievance, ARP-JCI-0695-23, about these incidents the following day, which was later dismissed by the Warden. *Id.* at ¶ 11, 13. On appeal, however, the Commissioner instructed the Warden to properly investigate Carter's allegations. *Id.* at ¶ 14.

On the evening of September 28, 2023, Carter was called to be interviewed by Hawkins, who had been assigned to investigate the grievance. ECF No. 6 at ¶ 14. Hawkins told Carter that none of the relief he requested was available and asked him to sign off on the grievance without interviewing any of the identified witnesses. *Id.* at ¶ 15. Following this interview, Carter asserts that he began to face extreme retaliation from Enongene for many weeks. *Id.* at ¶ 16. According to Carter, he had permission to wait for the water pressure to build up due to a known issue with his tier's showers. *Id.* But, on October 9, 2023, when Carter informed Enongene, he shouted sexual profanities and slurs at Carter, threatening to do a "real big shake down on that ass" if he did not get in the shower or return to his cell. *Id.* at ¶ 17. He immediately tried to report the misconduct to Hinneh but his requests were denied. *Id.* Enongene continued harassing Carter the next day "from the bubble" while Carter waited for assistance from his tier officer. *Id.* at ¶ 18, 19. Enongene also came onto the tier and offered inmates "things to cause [Carter] harm" and get him off the tier through violence. *Id.* at ¶ 19.

That same day, Carter filed another grievance, ARP-JCI-1260-23 outlining Enongene's daily harassment and sexual threats, refusal to let him go to medical pass, recreation, or meals, and offers to other inmates to assist them in harming Carter. *Id.* Seventeen inmates included their names as witnesses. *Id.* at ¶ 20.

On October 18, 2023, Carter and Enongene met with Lt. Eric Walker and a PREA (Prison Rape Elimination Act) investigator to discuss a pending grievance. ECF No. 6 at ¶ 21. Carter was informed that the PREA complaint would have to be processed separately from the rest of his complaints and he agreed. *Id.* According to Carter, during this meeting Enongene explained to Walker that he deadlocked Carter's single cell when he was absent for his protection. *Id.* Afterwards, however, Carter asserts that Enongene was only deadlocking the cell while Carter was inside to prevent him from going to meals and recreation and he refused to deadlock it when Carter requested. *Id.* at ¶ 22. Carter filed an informal grievance about their refusals on May 27, 2024. *Id.* Lt. Jenkins addressed the issue by posting a notice to the "bubble" officers that Carter's cell should be deadlocked when he exited. *Id.* at ¶ 23. When Enongene still failed to comply with his requests, Carter filed ARP-JCI-1823-24 on August 6, 2024. *Id.* at ¶ 24. Carter alleges that Enongene threw away Jenkins' posted notice. *Id.* On November 3, 2024, Jenkins posted another notice in the lieutenants' office, the "bubble," and the tier officers' desk; she also gave a copy to Carter. *Id.* at ¶ 25.

Carter states that he suffered irreparable injury to his name and reputation, sexual harassment, received retaliatory tickets, and elevated paranoia and PTSD. ECF No. 1 at 10. Carter seeks compensatory and punitive damages as well as an injunctive order preventing him from being retaliatorily transferred to another institution and for Enongene to be transferred to another prison.[2] ECF No. 6 at 11.

**B. Defendants' Response**

In support of their Motion, Defendants submit (1) Maryland Department of Public Safety and Correctional Service's Intelligence and Investigative Division ("IID") Report 23-35-02063 and (2) a Notice of Inmate Rule Violation ("NOIRV") issued to Carter on June 14, 2023, with the corresponding Hearing Record. Exhibits A and B, ECF Nos. 26-2, 26-3. These exhibits set forth the following.

---

[2] Carter sought the same relief in a motion for preliminary injunction, which was denied on April 2, 2025; his motion for reconsideration was also denied. *See* ECF Nos. 7, 20.

While housed at JCI, Carter was on "House Alone" status in general population. ECF No. 26-2 at 5. During an IID investigation into Carter's complaints against Enongene, Lt. Walker informed Carter that his cell could not be opened during mass movement or activity and explained that this would sometimes prevent his immediate release from his cell. *Id.*

On June 14, 2023, at approximately 4:40 p.m., Fruh reported that Carter walked off his tier without permission. ECF No. 26-3 at 3. When asked where he was going, Carter responded that he was going to medical. *Id.* Fruh told him that there was no call for medical movement and should wait; Carter refused to listen and insisted on going, walking off the tier. *Id.* Fruh ordered him to return, but he again refused. Carter tried to rush past Fruh, who was stationed at the front door, but instead bumped into him. *Id.* Sgts. Muhari and Blamo spoke with Carter, but he still refused to return to his tier. *Id.* Fruh issued a NOIRV for disobeying an order, being in a location without authorization, and demonstrating disrespect. *Id.* Carter pleaded guilty to all three violations and was sanctioned with the loss of 10 credits as well as 15 days' cell restriction and loss of phone privileges. *Id.* at 5-6.

## III. <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty., Maryland*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or

unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Carter that he had the right to respond to Defendants' Motion, that it could be construed as a motion for summary judgment, and that if he did not file a timely and

adequate response, the Court could rule in Defendants' favor. ECF No. 27. Moreover, this Motion, which identifies summary judgment as possible relief, provided sufficient notice for Carter to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Carter opposes the Motion and submits a declaration pursuant to Fed. R. Civ. P. 56(d) asserting that summary judgment is premature and he needs discovery to appropriately respond to the Motion. ECF Nos. 28, 28-2. His request will be addressed as to any claims that survive Rule 12(b)(6).

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## IV. DISCUSSION

Defendants seek dismissal of the Complaint or summary judgment in their favor because (1) they are immune from suit in their official capacities, (2) Carter fails to allege sufficient facts

to support First, Eighth, and Fourteenth Amendment claims, (3) Carter does not allege any physical injuries, and (4) Defendants are entitled to qualified immunity. ECF No. 26-1.

**A. Eleventh Amendment Immunity**

Although Carter does not specify in which capacity he sues Defendants, to the extent he sues them in their official capacities, his suit cannot proceed. The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Defendants are Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, to the extent Carter raises claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment and will be dismissed with prejudice. *See Pennhurst State School & Hosp.*, 465 U.S. at 100–01.

**B. Count One: First Amendment Violations**

Carter alleges that Sgt. Muhari, Sgt. Blamo, CO Hawkins, CO Enongene, and Sgt. Hinneh interfered with the grievance process and his ability to report misconduct to supervisors. Additionally, he claims that Hawkins, Fruh, and Enongene retaliated against him once he was able to engage in such protected conduct. Defendants contend that (1) Carter is not entitled to access an institutional grievance process and (2) once he did file grievances, Carter fails to sufficiently allege that any adverse actions were related to his complaints. ECF No. 26-1.

As to the first part of Carter's claim, "the Constitution creates no entitlement to grievance procedures or access to any such procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (quoting *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Therefore, the alleged denials of access to supervisors and the JCI grievance process generally fail to state a claim for relief. However, relevant here, once a prisoner accesses the grievance process, the prisoner is protected from retaliation under the First Amendment. *See id.* at 540.

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (alterations omitted). To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that

adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Shaw*, 59 F.4th at 130; *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). In assessing a First Amendment claim of retaliation, the question, "from an objective standpoint," is "whether the challenged conduct would 'likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Snoeyenbos v. Curtis*, 60 F.4th 723, 731 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 500). Thus, "the challenged conduct" must "generate more than a de minimis inconvenience." *Id.* at 730. Moreover, the Fourth Circuit has stated: "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Martin v. Duffy*, 977 F.3d 294, 304 (4th Cir. 2020) (cleaned up) (citation omitted).

To establish a causal relationship, the plaintiff first must "show [by direct or circumstantial evidence] that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Shaw*, 59 F.4th at 126 (quoting *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020)). That is, "he must show '(1) that the defendant[s were] aware of [his] engaging in protected activity' and (2) 'some degree of temporal proximity to suggest a causal connection.'" *Id.* at 130–31 (quoting *Constantine*, 411 F.3d at 501). Then, "[t]he burden … shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Id.* at 131. The Fourth Circuit treats prisoners' retaliation claims "with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Defendants argue that because there is no constitutionally protected right to prison work assignments, Fruh's alleged refusal to allow Carter to go to his sanitation shift does not constitute an adverse action as it relates to a retaliation claim. ECF No. 26-1 at 12. The Court disagrees. Regardless of Carter's constitutional interest in his job assignment, refusing to let him attend to his shift in retaliation for engaging in protected First Amendment activity, would support a claim for relief. Carter, however, has not alleged sufficient facts to state such a claim here. Carter does not claim that Fruh's refusal to open his cell door on June 14, 2023, was in response to any

protected activity. Rather, that event appears to be the catalyst for all that followed. The same can be said for (1) Fruh, Muhari, and Blamo's interference with Carter's medical pass and the disciplinary ticket issued shortly thereafter and (2) Fruh's threats to take away Carter's job that same evening when Carter again tried to talk to a supervisor about Fruh's misconduct. The events of June 14, 2023, that Carter alleges to be retaliatory actually precipitated the filing of his grievances – not the other way around. According to the Complaint, Carter first engaged with the JCI grievance process on June 15, 2023, when he filed ARP-JCI-0695-23. Carter complains that Hawkins asked him to sign off on the grievance during an interview without providing any relief and "used misrepresentations & machinations to thwart [his] grievance." ECF No. 1 at ¶ 30. To the extent that this conclusory allegation is intended to allege retaliation on the part of Hawkins, it does not constitute an adverse action nor suggest that Hawkins' actions were motivated by retaliatory animus.

Carter's main contentions are with Enongene, who he asserts started to retaliate against him following his interview with Hawkins. Carter claims that on October 9, 2023, Enongene called him homophobic slurs while he was waiting for the shower water pressure to rise and threatened him with explicit sexual harassment if he did not get in the shower or return to his cell. Enongene continued to harass him the next day "from the bubble" while Carter was waiting to speak with his tier officer. Enongene eventually came onto the tier himself to continue the harassment and then approached inmates requesting that they harm Carter to remove him from the tier. The Complaint lacks any facts showing a causal relationship between Enongene's actions and the grievance Carter filed about the incidents on June 14, 2023. Notably, Enongene was not the subject of that grievance. In fact, nothing in the Complaint asserts that Enongene was aware of Carter's grievance or the interview with Hawkins.

Carter did not file a grievance against Enongene until October 10, 2023, ARP-JCI-1260-23, following this alleged harassment. Carter states that an interview was conducted in response to the grievance, during which the issue of deadlocking Carter's single cell for safety when Carter exited his cell was addressed. Carter claims that after the interview, Enongene was only deadlocking the cell while Carter was in it to exclude him from meals and recreation but would not deadlock the cell upon Carter's request. Carter does not include any facts supporting Enongene's alleged motive regarding deadlocking his cell. Moreover, objectively, this behavior alone would be unlikely to deter someone from exercising their First Amendment rights. Without

more, this does not amount to more than a mere inconvenience to Carter. Carter in fact continued to pursue formal and informal complaints about this issue in spite of Enongene's action. For these reasons, the Complaint fails to sufficiently state a claim under the First Amendment, and Carter's retaliation claims must be dismissed.[3]

**C. Count Two: Eighth Amendment Violation**

Carter alleges that Defendants Fruh, Muhari, Blamo, Enongene, and Hinneh subjected him to unconstitutional conditions of confinement when it was broadcast that he was a snitch, his safety concerns were ignored or disregarded, he was subjected to sexual harassment, and officers encouraged violence against him by other inmates.

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "concepts of dignity, civilized standards, humanity, and decency." *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "That protection imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of … inmates.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)).

Conditions of confinement that "involve wanton and unnecessary infliction of pain;" or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel

[3] Also pending is Carter's motion seeking injunctive relief. ECF No. 34. He seeks an order requiring JCI and their medical staff "to stop interfering with [his] doctor ordered medical treatments & comply with [his] doctor order." *Id.* at 1. He asserts that the alleged interference is also retaliatory. *Id.* A party seeking a preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292–93 (4th Cir. 2011). "All four requirements must be satisfied." *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (brackets omitted). Because Carter's retaliation claims must be dismissed, Carter cannot show that he is likely to succeed on the merits of Count One at trial. As he cannot satisfy all four *Winter* factors, his motion must be denied.

and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson*, 878 F.3d at 107. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N. Carolina Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Defendants construe Fruh and Enongene's statements as mere verbal threats, but this is a misinterpretation of the Complaint. Carter does not claim that Fruh threatened to tell the inmates on his tier that he was a snitch, but that Fruh actually did so to approximately 100 inmates. Carter asserts that such a label puts him at risk of serious physical injury. Additionally, he alleges that Fruh did so because of the risk it posed to Carter.

Defendants make the same argument about Enongene's sexually explicit comments. "Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, *see Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *see also Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016). However, a threat of harm combined with action apparently designed to carry out that threat may state Eighth Amendment claim. *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978). Enongene's threats were accompanied by his actively pursuing

inmates to violently harm Carter the following day. As such, the Court finds that Carter has adequately stated Eighth Amendment claims against Fruh and Enongene.

As to Sgt. Muhari, Blamo, and Hinneh, Carter's claims concern their failure to report Fruh and Enongene's misconduct or Carter's safety concerns to supervisors. While Carter does not allege that he suffered any significant physical or emotional injury, liberally construing the Complaint, Carter does allege the risk of such an injury. Defendants do not argue that Muhari, Blamo, and Hinneh were not deliberately indifferent and the Court will not do so for them. Carter has therefore sufficiently stated his Eighth Amendment claims. Construed as a motion to dismiss under Rule 12(b)(6), their Motion is denied as to Carter's Eighth Amendment claim. Because Defendants have not substantively responded to Carter's claim, however, it cannot be determined on the current record whether they are entitled to summary judgment.

In light of the evidence submitted by Defendants, the Court will now consider Carter's declaration pursuant to Fed. R. Civ. P. 56(d). "[S]ummary judgment should only be granted 'after adequate time for discovery,'" *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 322). "[W]hen a party lacks material facts necessary to combat a summary judgment motion, [he] may file an 'affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition,'" referred to as a Rule 56(d) motion. *Id.* (quoting Fed. R. Civ. P. 56(d)).

Rule 56(d) motions "must be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Id.* at 483–84 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). "[S]uch motions are 'broadly favored and should be liberally granted.'" *Id.* at 484 (quoting *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc)). "This is especially true in the context of pro se litigation," *Jenkins v. Woodard*, 109 F.4th 242, 251 (4th Cir. 2024) (citing *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)), particularly "when a case involves complex factual questions about intent and motive" and "the relevant facts are exclusively in the control of the opposing party." *Harrods Ltd.*, 302 F.3d at 247 (citations omitted). The Fourth Circuit recently emphasized that discovery is "broadly favored" in advance of reaching summary judgment and district courts are to afford pro se plaintiffs leniency in regard to the requirements of Rule 56(d). *Farabee v. Gardella*, 131 F.4th 185, 193–95 (4th Cir. 2025). Still, a plaintiff "cannot simply demand

discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011).

"The threshold showing to support a Rule 56(d) motion is low. For example, when a nonmovant bears no fault for its 'little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved,' a formal Rule 56(d) affidavit is not mandatory." *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 369 (4th Cir. 2025), (quoting *Harrods Ltd.*, 302 F.3d at 244). The nonmovant need only "adequately inform[] the district court that the motion is pre-mature and that more discovery is necessary." *Id.* Rule 56(d) "motions may be denied ... if 'the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)).

Carter states that from the initiation of this case he believed discovery would be necessary to obtain witness declarations. ECF No. 28-2 at ¶ 6. Carter asserts that he needs the assistance of counsel to evaluate the credibility of the Defendants' statement of facts and obtain an expert witness. *Id.* at ¶ 9. Specifically, Carter states that he needs declarations from the three inmates who witnessed Fruh telling inmates that Carter was a snitch and the corresponding surveillance footage; any records created by Blamo and Muhari following Carter's report of Fruh's actions; depositions of defendants Fruh, Enongene, and Hinneh; records describing the conditions of the JCI DD shower on October 9, 2023; video surveillance of the alleged incident between him and Enongene outside the showers; JCI's policy on responding to sexual harassment allegations by inmates; and investigative records from October 27, 2023, including any witness statements. *See id.* at ¶ 11(a)-(q). Carter asserts that without the stated discovery, he cannot support his arguments that genuine issues of material fact exist. *Id.* at ¶ 14. Carter has also filed a motion to appoint counsel. ECF No. 29.

To survive summary judgment on the Eighth Amendment claims that remain, Carter must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837–38 (1994)) (internal quotations omitted). At minimum, genuine disputes of material fact exist regarding Carter's incident with Fruh wherein Fruh allegedly told the entire tier that Carter was a snitch.

Fruh's report in the NOIRV is contradicted by declarations Carter submitted with the Complaint from various JCI inmates present on June 14, 2023, which corroborate his version of events. ECF Nos. 1-4, 1-5, 1-6. As to Enongene's alleged harrassment, the IID report submitted by Defendants (ECF No. 26-2) contains statements from Carter during an interview which challenge Carter's allegations that Enongene sexually harassed him as well as the version of events presented in the relevant inmate declarations. ECF Nos. 1-9, 1-10, 1-11. There is no evidence in the record regarding Enongene's alleged solicitation of inmates to assault Carter. Therefore, in light of Carter's Rule 56(d) declaration and the genuine issues of material fact discussed herein, the Court finds that summary judgment is premature. Because these claims will proceed to discovery, the Court will grant Carter's request for counsel.

**D. Count Three: Fourteenth Amendment Violation**

Finally, Carter asserts that Muhari, Blamo, Hawkins, and Hinneh violated his right to equal protection under the law pursuant to the Fourteenth Amendment.

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To show that their equal protection rights were violated, a plaintiff must demonstrate that they were treated differently than similarly situated inmates and the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985)). If the discrimination was based on a plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, the plaintiff must show that the discrimination did not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440–42. The key to an equal protection claim requires a showing "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051-52 (8th Cir. 1998).

Even assuming the facts in the Complaint are true, Carter fails to allege any facts which show that Muhari, Blamo, Hawkins, or Hinneh treated him differently than a similarly situated inmate. In fact, he does not explain how he was treated differently than any other inmate at JCI. Thus, his conclusion that he was denied equal protection under the law does not support a claim under the Fourteenth Amendment. Accordingly, this claim must be dismissed.

## V. CONCLUSION

By separate Order to follow, Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment will be granted in part and denied in part. The Complaint against Defendants in their official capacities must be dismissed along with Counts One and Three. Defendants Fruh, Muhari, Blamo, Enongene, and Hinneh shall answer Count Two within 30 days.

Date

LYDIA KAY GRIGGSBY
United States District Judge